UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MARK COOPER

                                        Plaintiff,                          **Docket No.:**

                                                                            **COMPLAINT**
                        -against-                                           ***Jury Trial is Demanded***

CENTURY 21 STORES, LLC, KEVIN ULRICH,
in his official and professional capacity, IAN DEABRACIO,
in his official and professional capacity

                                        Defendants.
----------------------------------------------------------------------X

        PLAINTIFF, MARK COOPER, by and through his attorneys, THE LAW OFFICES OF

FREDERICK K. BREWINGTON, states and alleges as follows:

                            **PRELIMINARY STATEMENT**

        1.        This is a civil action seeking monetary relief, compensatory, punitive damages,

disbursements, costs and fees for violations of the Plaintiff's rights, brought pursuant to 42 U.S.C. §

1981, 42 U.S.C § 2000a, New York State Civil Rights Law, New York State Executive Law, false

imprisonment, negligence, defamation, intentional infliction of emotional distress, negligent infliction

of emotional distress, and vicarious liability.

        2.        Plaintiff alleges that the Defendants (collectively and individually) negligently,

wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive him of his

Civil rights and other rights pursuant to the laws of the State of New York, pursuant to the above

mentioned statute and causes of action by committing racially discriminatory acts and depriving the

Plaintiff of his rights secured by the Constitution of the United States, the Constitution of the State of

New York and laws of the State of New York.

        3.        More specifically, Plaintiff alleges that he was wrongfully watched, scrutinized,

                                        1

followed, stopped, detained, falsely accused, defamed, profiled,  and damaged, by Defendants, CENTURY 21 STORES, LLC, KEVIN ULRICH, and IAN DEABRACIO  because of his race and color. Additionally, the Defendants are liable to the Plaintiff for defamation, and for conspiring to condone and encourage such civil rights violations by failing to properly investigate and punish actual shoplifters, while wrongfully and falsely accusing certain customers of crimes simply because of their race/color. Defendants are liable to the Plaintiff for maliciously fabricating, implementing and attempting to prosecute charges against the Plaintiff.

   4.  Further, Defendants deprived MARK COOPER of his rights due to his race and color. Said failure by Defendants to properly investigate alleged thefts, while improperly profiling and accusing minority customers, demonstrates a callous indifference towards Plaintiff and supports systemic violations of civil and due process rights among minority persons. The pattern of indifference by CENTURY 21 STORES, LLC, KEVIN ULRICH, and IAN DEABRACIO , encourages employees to believe that they can abuse minority customers with impunity, and thus foreseeably led to the unjustified accusations, detainment, defamation of character, and intentional infliction of emotional distress of MARK COOPER.

**JURISDICTION AND VENUE**

   5.  The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

   6.  This Court is requested to exercise supplemental jurisdiction with respect to Plaintiff's State Law claims pursuant to 28 U.S.C. § 1367.

   7.  Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that Plaintiff resides in the County of Nassau, State of New York. Furthermore, the place where the events and violations herein alleged occurred was in the County of Nassau, State of New York.

**PARTIES**

8.      Plaintiff, Mark Cooper (hereinafter "Mr. Cooper"), is an African American

male from Jamaica, West Indies. Mr. Cooper is currently forty six (46) years of age. Mr. Cooper

resides in East Meadow, New York, County of Nassau.

9.      Upon information and belief, Defendant, CENTURY 21 STORES, LLC

(hereinafter referred to as "CENTURY 21") is a domestic limited liability company and is chain of

department stores in the northeastern United States with its headquarters located in New York City.

CENTURY 21 operates stores in New York and New Jersey. CENTURY 21 is a retailer of clothing,

footwear, bedding, furniture, jewelry, beauty products, electronics, and housewares. The CENTURY

21 store in the instant action is located at 1085 Old Country Road, Westbury, NY, in the County of

Nassau.

10.      Upon information and belief, Defendant, KEVIN ULRICH (hereinafter"MR

ULRICH"), at all times relevant to this complaint is a security guard at the above mentioned

CENTURY 21 store. Mr. Ulrich is a white male.

11.      Upon information and belief, Defendant, IAN DEABRACIO (hereinafter"MR

ULRICH"), at all times relevant to this complaint is a security guard at the above mentioned

CENTURY 21 store. Mr. Ulrich is a white male.

**FACTUAL ALLEGATIONS**

12.      On or about June 28, 2013, Mr. Cooper visited CENTURY 21 located at 1085 Old

Country Road, Westbury, NY, in the County of Nassau, a store that he had frequented often.

13.      Mr. Cooper visited this store so often that he had obtained a CENTURY 21 gold card,

a card given to frequent shoppers.

14.     Mr. Cooper had visited the store in order to purchase items for his birthday celebration scheduled to take place that evening.

15.     Mr. Cooper first purchased a men's fragrance for $29.99.

16.     Thereafter, Mr. Cooper went to the men's department and attempted to purchase clothing in the amount of $242.32.

17.     Mr. Cooper went to the cashier and handed her two (2) one hundred dollar bills and one fifty dollar bill along with thirty two cents for a total of $250.32.

18.     At that time, the cashier scanned each bill into a machine. She then told Mr. Cooper that the fifty dollar bill was fine but that there seemed to be a problem with the two (2) one hundred dollar bills that Mr. Cooper had rendered to her.

19.     Although a bit perplexed, Mr. Cooper pulled out another set of two (2) one hundred dollar bills from a different set of bills that he had and handed those to the cashier.

20.     Unfortunately, the cashier told Mr. Cooper that these bills were also not scanning properly and that there seemed to be a problem.

21.     During this time, another woman, an employee of the store was writing down all of the serial numbers on all of the money that I had given the cashier.

22.     The cashier also told Mr. Cooper that her machine had not been functioning properly.

23.     At this time Defendant ULRICH approached Mr. Cooper accusing him of possession counterfeit bills.

24.     Mr. Cooper explained to Defendant ULRICH that he had just come from the local Chase bank located at 514 Old County Road, Westbury New York, County of Nassau, and that he had cashed a check there, thereby obtaining the bills that he had tendered to the cashier.

4

25.     Defendant ULRICH instructed Mr. Cooper to go back to the bank and have them verify that the money was not counterfeit.

26.     Mr. Cooper agreed and asked the Cashier to hold onto his items as he went to the Chase bank nearby located at 514 Old County Road, Westbury New York, County of Nassau. Mr. Cooper had completed a transaction at the bank prior to going into the CENTURY 21 store to make his purchases. As such, the bills that Mr. Cooper had tendered to the cashier were bills that he had obtained from the bank just minutes before entering the store.

27.     Mr. Cooper returned to the bank and spoke with a teller, asking if she could check all of the bills that had been tendered to Mr. Cooper and make sure that the bills did not have any defects.

28.     The teller complied with Mr. Cooper's request and told him that all of the bills in his possession including the bills that Mr. Cooper had tendered to the cashier at CENTURY 21, were without defect.

29.     In fact, Mr. Cooper also decided to cash a check this time. After receiving the cash from the teller, he kept it in a separate pocket than the money that he had received earlier, which he had tendered to the cashier.

30.     With this information, Mr. Cooper returned to CENTURY 21 to finalize his purchases. He returned to the same cashier, and informed her that he had just had the bills checked at the local Chase bank and that the bank confirmed that the money was without defect and in no way counterfeit.

31.     Mr. Cooper handed the cashier the same two (2) one hundred dollar bills and one fifty dollar bill with thirty two cents totaling $250.32 that he had given to her earlier.

5

32.     The cashier tried the bills once more and that time, they worked without issue. The cashier handed Mr. Cooper twenty dollars ($20.00) in change.

33.     Mr. Cooper thanked the cashier and began leaving the store with his purchases in hand.

34.     Unfortunately Mr. Cooper did not make it out of the store because he was approached by Defendants ULRICH and DEABRACIO in an abrasive manner demanding that Mr. Cooper follow them back to a "security room."

35.     Although Mr. Cooper had just returned from the bank and made his purchase without issues, Defendants ULRICH and DEABRACIO accused Mr. Cooper of having "fake" money.

36.     Defendants ULRICH and DEABRACIO stated to Mr. Cooper that they would have to call the police.

37.     Mr. Cooper explained to Defendants that he had just come back from the local Chase bank as instructed by Defendant ULRICH and had the money verified.

38.     In fact, Mr. Cooper gave them not only the address of the bank, but the name of the individual with whom he had spoken and who insured to him that the money was not in any way counterfeit.

39.     Defendants ignored Mr. Cooper and proceeded to push him, scream at him, and accuse him of criminal activity in front of other patrons in the store.

40.     Mr. Cooper was astounded and explained to Defendants that he was a regular customer of CENTURY 21, that he owned a gold card, and that he had spent over seven thousand dollars ($7,000) the month before, that being May 2013.

41.     Nevertheless, Defendants continued to ridicule Mr. Cooper, telling him to "shut up"

6

and accusing him of criminal activity.

42. Defendants unlawfully and without a justified reason detained Mr. Cooper for over three and one half hours.

43. Upon information and belief, Mr. Cooper was unlawfully profiled and treated in this manner only because of his race and national origin. Mr. Cooper is an African American male from Jamaica, West Indies and speaks with a Jamaican accent.

44. Defendants finally called the police after sometime and the Nassau County Police Department responded.

45. When the police arrived, Mr. Cooper explained to the officers exactly what had transpired including but not limited to his going to the bank to have the money checked.

46. The officers took the bills in Mr. Cooper's possession including those that had been given to the cashier, and visited the Chase bank, and specifically the individual whom had verified that Mr. Cooper's money was not counterfeit.

47. The police then went to the local HESS gas station and explained to the attendant that they would attempt to put a $100 bill into one of the machines to determine if the money was counterfeit. The gas station attendant understood and agreed to reimburse the officers the $100 if the money was indeed real and the machine kept the money.

48. Indeed, the Officers inserted one of the $100 bills from Mr. Cooper's money into the machine and the machine accepted same. As such, the gas station attendant agreed that the money was not counterfeit and returned two (2) fifty dollar bills to the Officers totaling One hundred dollars ($100).

49. When the police returned, the Officers confirmed just what Mr. Cooper had relayed

to them; that the money was not counterfeit and that he had cashed a check at the bank just prior to entering the CENTURY 21 store.

50.     The Officers returned the money to Mr. Cooper and indicated to him that one of the one hundred dollar bills was missing and had been replaced with the two (2) fifty dollar bills given to them by the gas station attendant at the Hess gas station.

51.     The Officers then told Mr. Cooper that he was free to leave after approximately three and one half hours.

52.     Upon information and belief, the Officers reprimanded Defendants ULRICH and DEABRACIO for having treated Mr. Cooper in such an unlawful and disgraceful manner.

53.     Upon information and belief, both Defendants ULRICH and DEABRACIO knew that the machine that the cashier had been using to check Mr. Cooper's bills had not been functioning properly.

54.     As Mr. Cooper got up to leave, Defendant ULRICH asked Mr. Cooper if he could take a look at the money returned to him by the Officers. Mr. Cooper complied and handed Defendant ULRICH the money.

55.     Defendant ULRICH looked at the money handed to him by Mr. Cooper and stated, "Oh shit, it's 2006" indicated the year that the money had been printed.

56.     Upon information and belief, money that had been printed in 2006 were not reading properly in the machines at the store.

57.     In addition, upon information and belief, money printed in 2006 had different markings on them than money that had been printed earlier.

58.     Upon information and belief, Mr. Cooper had only been treated in this unlawful and

8

discriminatory manner as a result of his race and national origin.

59.     Mr. Cooper attempted to reach out to CENTURY 21 and make his complaints about the matter to no avail.

60.     As a result of Defendants' false accusations against Mr. Cooper and their willing and wrongful attempt to have Mr. Cooper arrested, Mr. Cooper endured severe emotional distress, fear, great humiliation, embarrassment, trauma, pain and suffering.

61.     As a result of Defendants' false accusations against Mr. Cooper and their willing and wrongful attempt to have Mr. Cooper arrested, Mr. Cooper suffered severe emotional and psychological injuries, including but not limited to stress and anxiety as a result of possibly being subjected to possible criminal charges.

## AS AND FOR A FIRST COUNT
### 42 U.S.C. §1981

62.     The Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in paragraphs 1 through 59 of this Complaint with the same force and effect as though fully set forth herein.

63.     On June 28, 2013, Plaintiff MARK COOPER, sought to conduct business and enter into a contract with Defendants CENTURY 21 and its employees and representatives.

64.     Plaintiff MARK COOPER was clear about his intentions and made same known to Defendants in that he sought to enter into a contractual relationship with Defendants CENTURY 21 by shopping for and purchasing mens apparel on that day at that time.

65.     Plaintiff MARK COOPER was ready, willing, and able to enter into contract with Defendants CENTURY 21, but was forcibly prevented from doing so and denied equal access to

entering into the contract and remaining at the store, because of the color of his skin, that being black, his race, that being African descent, and his national origin, that being Jamaican. This treatment was done by Defendants CENTURY 21, KEVIN ULRICH, and IAN DEABRACIO.

66.     Each of the Defendants knew Plaintiff's race, color, and national origin and each was aware or should have been aware of Plaintiff's intent to enter into a contract with CENTURY 21, and be treated equally and provided equal opportunity as white patrons.

67.     As a consequence of Defendants' wrongful actions, willful neglect, callous indifference, negligent behavior and violation of state and federal laws, Plaintiff, MARK COOPER, was deprived of the freedom to enter into a contract without harassment and ridicule, engage in transactions and business on equal terms as white persons.  In addition, Plaintiff was seized and falsely detained, deprived of his freedom, was subjected to search seizure, was subjected to mental anguish, suffered great fear, embarrassment, personal, humiliation, and degradation.

68.     That by reason of the foregoing, Plaintiff MARK COOPER has been damaged in the sum of two million ($2,000,000.00) dollars.

## AS AND FOR A SECOND COUNT
### Title II, 42 U.S.C. § 2000a

69.     The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 66 of this complaint with the same force and effect as though fully set forth herein.

70.     On June 28, 2013, Plaintiff MARK COOPER, sought accommodations to conduct business with Defendants CENTURY 21, located at 1085 Old Country Road, Westbury, NY, in the County of Nassau.

10

71.   Plaintiff MARK COOPER was clear about his intentions and made same known to Defendants in that he sought accommodations to conduct business with Defendants CENTURY 21 by shopping for and attempting to purchase men's apparel on that day at that time.

72.   Plaintiff MARK COOPER was ready, willing, and able to conduct said business with Defendants CENTURY 21, but was forcibly prevented from conducting business and denied equal access to public accommodations made available to white persons/customers that visit CENTURY 21 because of the color of his skin, that being black, his race, that being African descent, and his national origin, that being Jamaican.

73.   Defendants knew Plaintiff's race, color, and national orign and each was aware or should have been aware of Plaintiff's intent to conduct business and seek basic accommodations from CENTURY 21, and be treated equally and provided equal opportunity as white patrons. However, Defendants, and all of them, denied Mr. COOPER  full and equal enjoyment of its goods, services, facilities, privileges, advantages, and accommodations due to his race, color, and national origin.

74.   As a consequence of Defendants' wrongful actions, willful neglect, callous indifference, negligent behavior and violation of state and federal laws, Plaintiff, MARK COOPER, was prevented from receiving equal accommodations as provided to white persons and was prevented from engaging in transactions and business on equal terms as white persons. Instead, Plaintiff was seized and falsely detained, deprived of his freedom, was subjected to search seizure, was subjected to mental anguish, suffered great fear, embarrassment, personal, humiliation, and degradation. All of these rights are secured to Plaintiff under 42 U.S.C. § 2000a.

75.   That by reason of the foregoing, Plaintiff MARK COOPER has been damaged in the

sum of two million ($2,000,000.00) dollars.

## AND AS FOR A THIRD COUNT
## VIOLATIONS UNDER NEW YORK STATE
## CIVIL RIGHTS LAW § 40

76.     The Plaintiff repeats, reiterates, and realleges each and every allegation contained

in paragraphs 1 through 73 of this complaint with the same force and effect as though fully set forth

herein.

77.     Upon the filing of this action, a copy is being served on the Office of the Attorney

General.

78.     On June 28, 2013, Plaintiff MARK COOPER, sought accommodations to

conduct business with Defendants CENTURY 21 STORES, LLC, located at 1085 Old Country Road,

Westbury, NY, in the County of Nassau.

79.     Plaintiff MARK COOPER was clear about his intentions and made same known to

Defendants in that he sought accommodations to conduct business with Defendants CENTURY 21

by shopping for and attempting to purchase men's apparel on that day at that time.

80.     Plaintiff MARK COOPER was ready, willing, and able to conduct said business with

Defendants CENTURY 21, but was forcibly prevented from conducting business and denied equal

access to public accommodations made available to white persons/customers that visit CENTURY

21, because of the color of his skin, that being black, his race, that being African descent, and his

national origin, that being Jamaican.

81.     Defendants, and all of them knew Plaintiff's race, color and national origin, and each

was aware or should have been aware of Plaintiff's intent to conduct business and seek basic

accommodations from CENTURY 21, and Defendants ULRICH and DEABRACIO, and be treated

equally and provided equal opportunity as white patrons.

82.     Mr. COOPER was denied full and equal accommodations, advantages, facilities and privileges as provided by Defendants to non African American and non-Jamaican persons.

83.     As a consequence of Defendants' wrongful actions, willful neglect, callous indifference, negligent behavior and violation of state and federal laws, Plaintiff, MARK COOPER, was prevented from receiving equal accommodations as provided to white persons and was prevented from engaging in transactions and business on equal terms as white persons. Instead, Plaintiff was seized and falsely detained, deprived of his freedom, was subjected to search seizure, was subjected to mental anguish, suffered great fear, embarrassment, personal, humiliation, and degradation.

84.     That by reason of the foregoing, Plaintiff MARK COOPER  has been damaged in the sum of two million ($2,000,000.00) dollars.

## AS AND FOR A FOURTH COUNT
## VIOLATIONS UNDER NEW YORK STATE EXECUTIVE LAW
### (HUMAN RIGHTS LAW § 296)

85.     The plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 130 of this complaint with the same force and effect as though fully set forth herein.

86.     On June 28, 2013, Plaintiff MARK COOPER, sought accommodations to conduct business with Defendants CENTURY 21  at the store, located at 1085 Old Country Road, Westbury, NY, in the County of Nassau.

87.     Plaintiff MARK COOPER was clear about his intentions and made same known to Defendants in that he sought accommodations to conduct business with Defendants CENTURY 21

13

by shopping for and attempting to purchase men's apparel on that day at that time.

88.   Plaintiff MARK COOPER was ready, willing, and able to conduct said business with Defendants CENTURY 21, but was forcibly prevented from conducting business and denied equal access to public accommodations made available to white persons/customers that visit CENTURY 21 because of the color of his skin, that being black, his race, that being African descent, and his national origin, that being Jamaican.

89.   Defendants knew Plaintiff's race, color, and national origin, and each was aware or should have been aware of Plaintiff's intent to conduct business and seek basic accommodations from CENTURY 21, and be treated equally and provided equal opportunity as white patrons.

90.   As a consequence of Defendants' wrongful actions, willful neglect, callous indifference, negligent behavior and violation of state and federal laws, Plaintiff, MARK COOPER, was prevented from receiving equal accommodations as provided to white persons and was prevented from engaging in transactions and business on equal terms as white persons. Instead, Plaintiff was seized and falsely detained, deprived of his freedom, was subjected to search seizure, was subjected to mental anguish, suffered great fear, embarrassment, personal, humiliation, and degradation.

91.   That by reason of the foregoing, Plaintiff MARK COOPER has been damaged in the sum of two million ($2,000,000.00) dollars.

## AS AND FOR A FIFTH COUNT
### NEGLIGENCE

92.   The Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 89 of this Complaint with the same force and effect as though fully set forth

herein.

93.     Defendants and in particular CENTURY 21, KEVIN ULRICH and IAN DEABRACIO, carelessly, recklessly and negligently accused and wrongfully identified Plaintiff MARK COOPER as a person who was engaged in some form of criminal activity and did cause the Police to make contact with Plaintiff's person as stated herein above, without Plaintiff's consent.

94.     Defendants were under a legal duty not to falsely charge, accuse or identify Plaintiff MARK COOPER or any other patrons of crimes. Defendants were under a duty to use reasonable care to avoid such false claims. Defendants CENTURY 21, KEVIN ULRICH, and IAN DEABRACIO breached their duty when,   while they negligently, recklessly and carelessly accused, charged and caused the wrongful detention and possible criminal prosecution of Plaintiff without his permission and without any reasonable basis.

95.     In actively inflicting and failing to prevent the above stated abuses incurred by MARK COOPER, the Defendants acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of care.

96.     The breach of duty by CENTURY 21, KEVIN ULRICH, and IAN DEABRACIO was a direct and proximate cause of the harms suffered by Plaintiff MARK COOPER. Said harms include pain and suffering which continues to this day, personal humiliation, damage to reputation and loss of standing in the community, and severe emotional and psychological damage.

97.     As a proximate result of the acts of Defendants, Plaintiff sustained serious injuries/damages. Plaintiff suffers from intense anxiety and distress, mental anguish, pain and suffering, humiliation, personal discomfort, and legal fees/costs, among other things.

98.     By reason of the foregoing, Plaintiff MARK COOPER has been damaged in the sum

of two million ($2,000,000.00) dollars.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**DEFAMATION**

99.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 96 of this Complaint with the same force and effect as though fully set forth herein.

100.    The Plaintiff was followed, stopped, detained, manhandled, accused of being a criminal, interrogated by police officers in full view and presence of other customers at CENTURY 21. Specifically, Defendants have stated that Plaintiff was involved in possession counterfeit United States currency, and was stated to harm the good name and reputation of Plaintiff, without regard for the truth of said statements or the impact on Plaintiff.

101.    The actual statements and symbolic statements through wrongful conduct were made by Defendants, each of whom knew or should have known that the statements were false; to wit, that the Plaintiff was not a criminal and/or in possession of counterfeit money  and was not to be treated like such in full public view.

102.    The Defendants made false statements of fact about the Plaintiff, by accusing and attempting to have Plaintiff arrested.

103.    All of the above allegations and statements of fact were false, and the Defendants knew or should have known of this falsity.

104.    As a result of the actual, symbolic and official statements made by the Defendants in their wrongful arrest, charging and prosecution, of Plaintiff, the Plaintiff has suffered great harm and damage to his reputation in his community and professional life, to wit, he was made to appear

to be involved in criminal activity.

105.   Whereas, as a result of said defamation, the Plaintiff continues to suffer from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and severe/extreme emotional distress and loss of standing in the professional community.

106.   By reason of the foregoing, Plaintiffs have been damaged in the sum of 2 million ($2,000,000.00) dollars.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107.   The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 104 of this Complaint with the same force and effect as though fully set forth herein.

108.   The Defendants, and each of them, acted outrageously for their above-stated roles in the wrongful stop, detainment, charging, failing to investigate, failure to adhere to law, rules and regulations known to them, failing to heed Plaintiffs protestations, manhandling, subjecting Plaintiff to prolonged captivity, intimidation and public humiliation.

109.   Defendants acted outrageously in willingly and knowingly making false statements about Plaintiff in order to ensure his demise and conviction and by purposefully destroying evidence needed for Plaintiff's defense.

110.   Said emotional harm was exacerbated by the persistence of Defendants, by maintaining the false claims against the Plaintiff although all proof and evidence indicated that Plaintiff was not involved in the alleged crimes.  These facts were known by the Defendants, yet they detained and accused Plaintiff with the intention of causing extreme further harm and duress to the

Plaintiff.

111.    The Defendants knew that their conduct would cause severe and extreme emotional harm to the Plaintiff and injury to Plaintiff's good name and reputation.

112.    Said harm did in fact occur in this case, in that the Plaintiff suffers from anxiety, anger, loss of sleep, and other impingement of the emotional good health.

113.    By reason of the foregoing, Plaintiffs have been damaged in the sum of one million ($1,000,000.00) dollars.

## AS AND FOR THE EIGHT CAUSE OF ACTION
## VICARIOUS LIABILITY

114.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 111 of this complaint with the same force and effect as though fully set forth herein.

115.    The Defendant, CENTURY 21,  had an affirmative duty to prevent and cease the false imprisonment, defamation, false accusations, negligent acts, reckless acts, intentional acts, of its members, employees, agents, and representatives, KEVIN ULRICH and IAN DEABRACIO, who violated Plaintiff, MARK COOPER, while performing within the scope of thier duties.

116.    Defendant, CENTURY 21 had an affirmative duty to investigate, supervise and discipline its members, employees, agents, and representatives, KEVIN ULRICH and IAN DEABRACIO and prevent other wrongful acts that were committed against Plaintiff MARK COOPER by KEVIN ULRICH and IAN DEABRACIO while acting within the scope of their employment/duties.

117.    In actively causing and failing to prevent the above stated abuses of its employees,

the Defendant, CENTURY 21 ,  acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to refrain from or prevent the above stated acts against MARK COOPER.

118.    In failing to reprimand Defendants ULRICH and DEABRACIO for their above-stated abuses against MARK COOPER, the Defendant, CENTURY 21: [1] acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to protect others such as Plaintiff to insure that said acts would not occur; and [2] ratified ULRICH and DEABRACIO'S negligent, intentional, malicious, and reckless acts.

119.    The breach of duty by CENTURY 21 was a direct and proximate cause of the harm suffered by Plaintiff MARK COOPER.  Said harm includes pain and suffering which continues to this day, monetary expenses, legal costs, personal humiliation, damage to reputation, severe emotional and psychological damage.

120.    For the above reasons, Defendant, CENTURY 21, is therefore vicariously liable for all of the intentional, negligent, and reckless acts of KEVIN ULRICH and IAN DEABRACIO.

121.    By reason of the foregoing, Plaintiff has been damaged in the sum of one Million Dollars ($1,000,000.00).

### AS AND FOR THE NINTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

122.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 119 of this complaint with the same force and effect as though fully set forth herein.

123.    The Defendant, CENTURY 21, had a duty, but negligently failed to supervise and

control its employees, agents, members and affiliates, ULRICH and DEABRACIO, who while acting within the scope of their employment, acted extreme and outrageously for their above-stated roles in the wrongful imprisonment, false accusations, manhandling, intimidation, defamation, harassment and public humiliation of the Plaintiff, MARK COOPER.

124.   Said emotional harm was exacerbated by the sustained and prolonged wrongful detainment of MARK COOPER, which was perpetuated by Defendants with the intention of causing extreme further harm and duress to the Plaintiff.

125.   The above mentioned negligent failures of CENTURY 21 caused and/or resulted in the abusive and wrongful conduct of its agents ULRICH and DEABRACIO, against Plaintiff, which was extreme, outrageous, callous, malicious, and dangerous to the mental and emotional well-being of Plaintiff.

126.    It was foreseeable that the Defendants conduct would cause severe and extreme emotional harm to Plaintiff.

127.   Said harm did in fact occur in this case, in that the Plaintiff was injured to the point where he still suffers from extreme and permanent episodes of anxiety, fear, anger, loss of sleep, and other impingements of his emotional well-being;

128.    By reason of the foregoing, Plaintiff has been damaged in the sum of One Million Dollars ($1,000,000.00).

**AS AND FOR THE TENTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**

129.   The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 126 of this complaint with the same force and effect as though fully set forth

herein.

130.   The Defendants lacked any legal or lawful basis to follow, harass, stop, search, seize, and/or detain MARK COOPER.

131.   The Defendant trapped Plaintiff, followed, harassed, stopped, searched, seized, wrongfully detained MARK COOPER without justifiable excuse, basis or cause.

132.   Defendants ULRICH and DEABRACIO wrongfully used physical force, threats, coercion and intimidation to restrain and confine Plaintiff inside of the store without permission, authority or privilege to do so at any time.  Said actions were intentional and aimed at injuring and causing Plaintiff great discomfort, humiliation and pain.

133.   As a result of said confinement, Plaintiff suffered severe emotional and psychological harm, anxiety, personal fear, and damages, all due to the callous indifference of said Defendants.

134.   By reason of the foregoing, Plaintiff has been damaged in the sum of one Million Dollars ($1,000,000.00).

**WHEREFORE,** plaintiff demands judgment against defendants:

a.  On the First Cause of Action in the sum of Two Million dollars ($2,000,000.00);

b.  On the Second Cause of Action in the sum of Two Million dollars ($2,000,000.00);

c.  On the Third Cause of Action in the sum of Two Million dollars ($2,000,000.00);

d.  On the Fourth Cause of Action in the sum of Two Million dollars ($2,000,000.00);

e.  On the Fifth Cause of Action in the sum of Two Million dollars ($2,000,000.00);

f.  On the Sixth Cause of Action in the sum of Two Million dollars ($2,000,000.00);

g.  On the Seventh Cause of Action in the sum of One Million Dollars ($1,000,000);

h.  On the Eight Cause of Action in the sum of One Million Dollars ($1,000,000);

i.  On the Ninth Cause of Action in the sum of One Million Dollars ($1,000,000);

j.  On the Tenth Cause of Action in the sum of One Million Dollars ($1,000,000);

k.   Punitive damages based upon the callous acts of Defendants, which were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiff, without regard for Plaintiff's well being, and were based on a lack of concern and ill-will towards Plaintiff.  Such acts therefore deserve an award of 4 Million Dollars ($4,000,000.00)

l.   Declaratory Judgment that defendants  wilfully violated plaintiffs' rights secured by federal and state law as alleged herein and a formal written apology for same;

m   An order granting such other legal and equitable relief as the court deems just and proper; and

.

n.  Award costs of this action including attorney's fees to the plaintiff.

## A JURY TRIAL IS HEREBY DEMANDED.

Dated: February 5, 2014                                Respectfully Submitted,
       Hempstead, New York


                                        BY:  _____/s/_____
                                             *JOHANNA C. DAVID*
                                             THE LAW OFFICES OF
                                             FREDERICK K. BREWINGTON
                                             *Attorneys for Plaintiff*
                                             556 Peninsula Blvd.
                                             Hempstead, New York 11550
                                             (516) 489-6959